## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| THE JOHN HARDY GROUP, INC., | |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| DERRICK J. GALUNAS, , SHELLY L. VANDEVEER AND VANDEVEER HOSPITALITY ADVISORS, INC., | Civil Action No. _____ |
| Defendants. | |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff The John Hardy Group, Inc. ("JHG") files this Complaint for Injunctive Relief and Damages against Defendants Derrick J. Galunas, Shelly L. Vandeveer and Vandeveer Hospitality Advisors, Inc. (collectively "Defendants") and respectfully shows the Court as follows:

### I.

### INTRODUCTION AND NATURE OF THE ACTION

1.      This is an action for injunctive relief and damages arising from Defendants' false advertising in violation of the federal Lanham Act, 15 U.S.C. § 1125(a); violation of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq*.; misappropriation of JHG's trade secrets in violation of the Georgia Trade

Secrets Act, O.C.G.A. 10-1-760 *et seq*.; computer theft in violation of O.C.G.A.

16-9-93; computer trespass in violation of O.C.G.A. 16-9-93; computer invasion of

privacy in violation of O.C.G.A. 16-9-93; false advertising in violation of

O.C.G.A. 10-1-372; tortious interference with JHG's contractual and business

relationships; breach of fiduciary duty and duty of loyalty; unjust enrichment; civil

conspiracy, and attorneys' fees pursuant to O.C.G.A. 13-6-11.

## II.

## <u>PARTIES</u>

2.     Plaintiff JHG is incorporated under the laws of Delaware and

maintains its principal place of business at The Centre Building, 5180 Roswell

Road NW, Atlanta, GA 30342.

3.      Defendant Derrick J. Galunas ("Galunas") is a former employee of

JHG and is a citizen of the State of Georgia who resides at 4800 Hiawatha Drive,

Hall County, Gainesville, GA 30506.

4.     Defendant Shelly L. Vandeveer ("Vandeveer") is a former employee

of JHG and is a citizen of the State of Georgia who resides at 4800 Hiawatha

Drive, Hall County, Gainesville, GA 30506.

5.     Defendants Galunas and Vandeveer are husband and wife.

6.      Defendant Vandeveer Hospitality Advisors, Inc. ("VHA") is incorporated in Georgia and maintains its office at 616 Green Street, Suite A, Hall County, Gainesville, GA 30501.

### III.

### <u>JURISDICTION AND VENUE</u>

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 because this case arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.* This Court also has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121.

8.      This Court has subject matter jurisdiction over JHG's state law claims pursuant to 28 U.S.C. §§ 1338 and 1367 and the doctrine of supplemental jurisdiction.

9.      This Court has personal jurisdiction over the Defendants because they are all residents of Georgia and this judicial district.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because all Defendants reside within this judicial district.  Pursuant to Local Rule 3.1 B., venue is proper in this division of this judicial district because the cause of action arises within this division of this judicial district.

# IV.

# **FACTUAL BACKGROUND**

A.    THE JOHN HARDY GROUP

11.    JHG has provided project and development management services to clients and customers in the hospitality industry for more than 20 years.  JHG has offices in Atlanta, New York, Hawaii, and Paris and has many national and international clients and customers, including owners, operators and developers of hotels.

12.    JHG provides a broad range of project and development services to its national and international clients and customers, including services for hotel construction, renovation and development, due diligence management, program management, project cost accounting, construction management, owner representation, contract negotiations, capital expenditure management, strategic planning and many similar and related services for the hospitality industry.

13.    JHG has developed policies, procedures, methods of operation, systems, concepts, and related project and development management tools to perform its services, including, but not limited to, proprietary accounting systems for developing and monitoring budgets, cost and other important aspects of a

project; project and program management plans; procedures and specifications for furniture, fixtures and equipment; and procedures for developing project proposals.

14.    JHG's trade secrets include, but are not limited to, its systems known as "Cap i/X", "Evaluate, Define and Control" and "JHG Black Book." Information detailing, generated by or included in JHG's "Cap i/X", "Evaluate, Define and Control" and "JHG Black Book" constitutes or contains trade secret information.

15.    JHG's computer files that contain its trade secrets are stored on a network drive that has hardware and software security protection for both outside and inside access.  In order to access electronic files, JHG issues an employee a username and password and then sets up that employee's JHG-owned computer to allow access to such files.  In addition to these default security measures, additional password protection can be added to JHG's files further restricting access to only those JHG employees who possess the additional password information.

16.    JHG's clients and customers frequently provide JHG with confidential project information necessary for JHG to provide services for hotel acquisition, construction, renovation and development projects ("Client Confidential Information").  JHG's clients and customers often require JHG to sign confidentiality and non-disclosure agreements for the Client Confidential

5

Information.  JHG takes all reasonable efforts necessary to protect the Client Confidential Information.

17.    JHG has a Team Member Handbook that establishes JHG's policies and procedures applicable to all employees of JHG.  Those policies and procedures include requirements for maintaining confidentiality of JHG's trade secrets, maintaining confidentiality of client matters, care of client records, and acceptable use of electronic communications. JHG requires all of its employees to comply with the policies and procedures in the Team Member Handbook as a condition of continued employment.

B.    GALUNAS AND VANDEVEER'S EMPLOYMENT WITH JHG

18.    Galunas was employed by JHG from 1992 to 2004 in the positions of Group Construction Manager, Director of Estimating and Director of Project Development Services.  Galunas voluntarily resigned his position with JHG in 2004.

19.    Vandeveer was employed by JHG from November 1999 to 2007 as a Project Director.  Vandeveer voluntarily resigned her employment with JHG in 2007 but, four months later, asked to return to JHG.  JHG agreed to re-hire Vandeveer and Vandeveer was employed with JHG from 2007 to 2012.

6

20.     As of 2012, JHG promoted Vandeveer to the job of Senior Project Director.  In that position, Vandeveer was responsible for managing JHG's services to clients for certain hotel construction, renovation and development projects.

21.     As Senior Project Director Vandeveer was the team leader on all her assigned development services provided by JHG.  Vandeveer was responsible for establishing the project goals for each service provided and managing in-house resources and outside consultants and contractors to meet these goals.  Vandeveer also had the responsibility to establish, maintain and manage client expectations and be the primary contact for all client communications.  Vandeveer was fully responsible for the communication, refinement and implementation of JHG's development performance goals and was responsible for building and maintaining customer relationships and analyzing customer requirements.

22.     Vandeveer held a position of trust and confidence with JHG. Vandeveer was responsible for implementation of projects for JHG's clients.  In that position, Vandeveer selected and recommended outside consultant firms and contractors for contracts with JHG's clients.  Vandeveer was also responsible for approving the Owner's payments to consulting firms and contractors of the Owner. In her position, Vandeveer had access to virtually all of JHG's confidential

information and Client Confidential Information, including confidential and sensitive financial information of JHG and JHG's clients.

23.     Many of the projects performed by Vandeveer involved non-disclosure agreements.  Vandeveer was aware of those non-disclosure agreements and owed duties of confidentiality and loyalty to JHG in protecting the confidential information of JHG and JHG's clients.

24.     Shortly after Vandeveer returned to work for JHG in 2007, Vandeveer asked JHG to re-hire Galunas.  Based on that request, JHG re-hired Galunas in March 2008 as Director of Construction Services.  Galunas worked for JHG as Director of Construction Services from 2008 to January 2014.

25.     Galunas held a position of trust and confidence with JHG.  Galunas was responsible for developing and implementing cost estimates and budgets for JHG's projects. In that position, Galunas had access to virtually all of JHG's confidential information and Client Confidential Information.  The cost estimates and budgets prepared by Galunas were crucial in establishing the viability of a project.  As such, JHG relied upon the cost estimates and budgets prepared by Galunas in contracting for and performing a new project.

26.     Most of the projects for which Galunas provided cost estimates and budgets involved competitive situations for both JHG and JHG's clients.  As such,

confidentiality was crucial and JHG's client's frequently required JHG to enter

non-disclosure agreements.  Galunas was aware of those non-disclosure

agreements and owed duties of confidentiality and loyalty to JHG in protecting the

confidential information of JHG and JHG's clients.

27.     As Director of Construction Services, Galunas had autonomy and

authority in managing projects JHG performed for its clients.  Galunas interfaced

with contractors and professionals, negotiated and prepared contracts, solicited

bids and made recommendations.  Galunas also had authority on behalf of JHG to

approve changes in work scope, scheduling and costs for contractors and

professionals.  Galunas further recommended and approved payment requests by

contractors and professionals and had authority to hire consultants and others to

assist JHG in the performance of its services.

28.     Galunas was responsible for JHG's client relationships, reporting to

JHG's clients and invoicing and collection of fees and expenses for these

assignments.  For major or troubled projects on which JHG was providing services,

Galunas was responsible for contractor selection and qualification, construction

contract negotiations, construction schedule evaluation and negotiation, evaluation

and negotiation of change order disputes, plan checking, constructability analysis,

construction phase insurance review, buy-out analysis on guaranteed maximum

price contracts and close-out documentation.  Galunas was also responsible for

implementing JHG's proprietary Cap I/X system, including assisting with

completion and implementation of control phase documents.

29.     During their employment, Galunas and Vandeveer knew that JHG

owned trade secrets and that JHG's clients provided Client Confidential

Information in order for JHG to provide services to those clients.

30.     JHG provided the Team Member Handbook to Galunas and

Vandeveer and Galunas and Vandeveer knew that they had obligations to maintain

as confidential and not disclose JHG's trade secrets as well as the Client

Confidential Information.  In fact, Galunas signed the Team Member Handbook as

recently as January 3, 2014, confirming his agreement to maintain as confidential

and not disclose JHG's trade secrets and the Client Confidential Information.  A

true and correct copy of excerpts from the Team Member Handbook is attached

hereto and incorporated herein by reference as Exhibit A.

31.     During their employment with JHG, Vandeveer and Galunas knew

that they were not authorized to use JHG's computer systems to access JHG's trade

secrets or the Client Confidential Information unless such information was

necessary for them to perform their jobs.  And, even in the case of authorized

access, Vandeveer and Galunas knew that they were obligated not to disclose such

information to third-parties or use that information contrary to the interests of JHG and JHG's clients. Further, Vandeveer and Galunas were not authorized to store JHG's information on their personal computers and were also not authorized to use such information personally.

### C. THE FORMATION OF VHA TO COMPETE DIRECTLY WITH JHG

32. Steven E. Pollak ("Pollak") was employed as the Director of Development and Advisory Services for JHG from 1997 to 2001 and again from 2007 to 2012. In that position, Pollak was responsible for the overall coordination of JHG's hotel acquisition and new development efforts as well as performing a variety of advisory consulting services including condominium conversion analyses, evaluation of properties' operations and financial statements, and creation of operating proformas.

33. At a time unknown to JHG but while employed by JHG, Pollak and Vandeveer determined that they would compete directly with JHG by attempting to offer similar or identical services to the hospitality industry. Pollak and Vandeveer also determined that they would offer services to JHG's existing and prospective clients.

34. As a result, Pollak abruptly resigned his employment with JHG in July 2012. At or around this same time, Vandeveer began to act in a hostile manner

11

towards JHG and her supervisors.  On September 3, 2012, Vandeveer abruptly resigned her employment with JHG.

35.   Pollak and Vandeveer immediately began competing directly against JHG.  On October 25, 2012, Vandeveer incorporated VHA in Georgia.

36.   VHA's current website confirms that VHA purports to offer services to clients in the hospitality industry that are similar, if not identical, to the services offered by JHG.  VHA's current website also falsely claims a large list of clients most of whom are, in reality, clients of JHG and not clients of VHA.  VHA's website further lists completed projects and case studies that are mostly, if not entirely, completed projects of JHG.  In fact, the information on VHA's website is based on marketing documents and materials that Galunas and Vandeveer took from JHG.  True and correct copies of excerpts from VHA's website are attached hereto and incorporated herein by reference as Exhibit B.

37.   At all relevant times, Galunas intended to join Vandeveer in the future in directly competing against JHG.  However, Galunas actively concealed that intention from JHG.

38.   In fact, almost immediately after JHG learned that Vandeveer had formed VHA, JHG questioned Galunas about his intentions.  Galunas falsely stated

12

to JHG that he loved working for JHG and intended to remain employed with JHG until his retirement (many years in the future).

39.     Based on these representations and his long-standing employment in significant and sensitive management positions, JHG trusted Galunas and continued to employ Galunas as Director of Construction Services.

40.     A December 2012 VHA marketing document, however, states that VHA "was formed in October 2012 by four senior executives" with experience in the industry.  A true and correct copy of this document is attached hereto and incorporated herein by reference as Exhibit C.

41.     On information and belief, the "four senior executives" referenced in the December 2012 VHA marketing document certainly included Vandeveer and Pollak.  The referenced "four senior executives" may also have included Galunas or, if not, asserted falsely that others with recognized status and experience in the hospitality industry were associated with VHA.

42.     On January 10, 2014, Galunas abruptly resigned his employment with JHG and informed JHG that his resignation would be effective on January 24, 2014.

13

D. JHG'S DISCOVERY OF THE SECRET CONSPIRACY OF GALUNAS AND VANDEVEER TO STEAL JHG'S TRADE SECRETS

43.     At the time Galunas left his employment with JHG, at the request of JHG, Galunas returned the computer and cell phone JHG provided for his employment.  Subsequently, while looking for information and documents on a project for which Galunas had responsibility, JHG discovered that Galunas had deleted most, if not all, of the emails on that computer and deleted other electronic documents and data of JHG.  JHG had not authorized Galunas to delete emails and electronic documents and data.   Galunas also failed to disclose that information to JHG during the meetings and discussions with JHG leading up to his voluntary separation from employment.

44.     Due to the extensive deletion of emails and electronic documents and data, JHG became concerned that Galunas was attempting to cover up improper, unauthorized and unlawful activity, including the possible theft of JHG's trade secrets.  As a result, JHG began an investigation.

45.     Although JHG's investigation is continuing, JHG has discovered that Galunas took at least approximately 30,000 documents – over 30 gigabytes of data – including several documents containing JHG's trade secrets during a long period

14

of time beginning in at least early October 2012 and continuing until his last day of employment with JHG on January 24, 2014.

46.    JHG's investigation also determined that Galunas deleted over 3,400 emails and electronic documents between January 2, 2014 and January 21, 2014 in an effort to cover up the theft of JHG's trade secrets.

47.    JHG also discovered that Galunas had been appointed as the Chief Financial Officer for VHA while Galunas was still employed by JHG.  Attached hereto and incorporated by reference as Exhibit D is a true and correct copy of the updated registration form filed by VHA with the Georgia Secretary of State's office on January 3, 2014 reflecting that VHA was updating its records to show that Galunas had been appointed CFO and Secretary of VHA while still employed by JHG.

48.    Having been appointed as an officer of VHA while still employed by JHG, Galunas had a material and substantial conflict of interest with JHG.  Despite that, Galunas never disclosed to JHG his position as Chief Financial Officer and Secretary of VHA or his material and substantial conflict of interest.  Instead, Galunas actively concealed his position with VHA and his material and substantial conflict of interest from JHG.

49.     JHG's investigation further determined that Galunas remained employed with JHG for the purpose of stealing JHG's trade secrets, and also for the purpose of deleting numerous JHG documents that comprised trade secrets.

50.     Galunas, Vandeveer and VHA then used that information to establish systems, policies, methods of operation, and procedures that were necessary for VHA to compete directly with JHG.  Galunas, Vandeveer and VHA also used JHG's internal documents to identify clients of JHG who were planning projects and then approached those clients in an effort to solicit their business and compete directly with JHG.

51.     Vandeveer, Galunas and VHA could not have developed the systems, policies, procedures, methods of operation, and contacts necessary to establish a business capable of competing directly with JHG without taking JHG's trade secrets.

52.     On October 12, 2012, Vandeveer instructed Galunas to set up a Gmail account so that Galunas and Vandeveer could secretly communicate from JHG's computer (the "Secret Gmail Account") and so that Galunas could email to Vandeveer and VHA computer files containing JHG's trade secrets and other documents and information.

16

53.     As instructed, Galunas set up the Secret Gmail Account and Galunas and Vandeveer immediately began communicating using that email account. During those communications, Galunas transmitted to Vandeveer and VHA extensive computer files containing JHG's trade secrets and other documents and materials owned by JHG, including the following:

Market Evaluation, Financial Projects and Development Cost Estimates for a JHG project in Texas;

Due Diligence information for a JHG project in New York;

Scope of Work documents for a project in Minnesota;

"Black Book" documents, including cash flow projections for a JHG project in Maryland (VHA then contacted JHG's client for that project shortly after receiving that information);

Budget information for a JHG project in or around Washington, D.C.;

A responsibility matrix for a client of JHG because "[Vandeveer] need[ed] it for [her] Austin job";

Due diligence management proposals prepared by JHG for a JHG project in Miami;

JHG's bid manual for a project in Florida "in case you need this as well";

Carpet and wall covering information prepared by JHG for a project in Washington, D.C for VHA's and Vandeveer's "future use";

Building surveys and proposals for a Novotel project being performed by JHG;

Design packages for a JHG project;

17

Bid analysis sheets for a project in Georgia; and

Project schedules and project documents for a client of JHG

54.     Vandeveer also requested Galunas to obtain passwords JHG had for certain client information so that Vandeveer and VHA could access Client Confidential Information, including hotel brand information.  Upon information and belief, Galunas obtained that Client Confidential Information from JHG and then provided such passwords to Vandeveer and/or provided the actual Client Confidential Information to Vandeveer and/or VHA.

55.     Galunas notified Vandeveer and VHA when clients contacted JHG regarding potential projects and encouraged Vandeveer and VHA to immediately make contact with such client.

56.     In fact, on at least one occasion in September 2013, Galunas told Vandeveer that he was working on a JHG project with a JHG client who was a "potential client" for VHA and that Galunas was going to have a phone call with that potential client (presumably to solicit that client for VHA).

57.     During the time period that Galunas was employed by both JHG and VHA, Galunas – at the direction of Vandeveer and VHA – accessed and used JHG's computers and computer networks with the intention of taking JHG's trade secrets and other property, and sending it to Vandeveer so that it could be used by

18

VHA.  Vandeveer directed Galunas to access specific computer files for specific clients in JHG's computer files in order to obtain contact and project information for those clients.

58.    Indeed, repeatedly when Vandeveer needed information for VHA business, Vandeveer would direct Galunas to obtain that information from JHG's computer files and Galunas would then access that information and send it to Vandeveer and VHA.

59.    For example, in February 2013, Galunas provided "JHG templates" for business documents such as timesheets, proposal letterhead, lien waivers, and contracts.

60.    Also, in October 2013, when VHA was working on a bid proposal for a client, a VHA employee contacted Galunas and requested that Galunas provide from JHG's computer files "high order of magnitude estimates".  Vandeveer also asked Galunas to provide from JHG's computer files "a standard bid form and a standard letter of intent" so that VHA could make a proposal to a client.  Galunas sent that information to Vandeveer and VHA and provided JHG's "bid manual" to Vandeveer and VHA.

61.     Further, Vandeveer, on at least one occasion, instructed Galunas to access JHG's virtual private network in order to locate and send to her and VHA information about a client and a project.

62.     In November 2013, Vandeveer instructed Galunas to contact a client or prospective client of VHA to find out what was going on with that client. Galunas presumably did so acting on behalf of VHA while still employed with JHG.

63.     At some time thereafter, Galunas deleted from JHG's computers and computer networks all or a substantial portion of the data he had taken from JHG's computers and computer networks.

64.     At all relevant times, Defendants had knowledge that Galunas' actions described above were taken without the authority of JHG.

65.     In October 2012, Galunas and Vandeveer were sending to each other password-protected computer files containing JHG's trade secrets and other documents and property of JHG in an effort to compete directly with JHG.

66.     In November 2012, Galunas used JHG's computer to send to Vandeveer information about a client of JHG known as RLJ Lodging Trust ("RLJ").  This was done to further Vandeveer and VHA's purpose of soliciting two

existing clients of JHG on behalf of VHA while Galunas was acting for JHG on projects with those clients.

67.    Vandeveer and VHA improperly used JHG's trade secrets and other materials to solicit business from RLJ.  VHA and RLJ subsequently entered into an agreement with RLJ that was solely the result of VHA's improper use of JHG's trade secrets and other materials.

68.    In doing so, Vandeveer demonstrated her malice towards JHG telling Galunas in an email "F_ _ _ Mel [Melinda Hall] and John [Hardy].  See below.  I will be competition now!  Celebrate!!!!"  (Expletive deleted).  A true and correct copy of this email is attached hereto and incorporated herein by reference as Exhibit E.

69.    Vandeveer further demonstrated her malice to JHG by calling at least one JHG employee an extremely vulgar, demeaning and offensive term in an email, referring to JHG employees as "f_ _ _ers" in another email and referring to JHG's work project as a "f_ _ _ _ _ joke!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!" all at the same time as Galunas and Vandeveer were stealing JHG's trade secrets and other information for use by VHA. In December 2012, Galunas transmitted JHG's trade secrets and other materials to Vandeveer about a consultant of JHG known as Marx Okubo.  Galunas, Vandeveer, Pollak and VHA improperly used JHG's

computer systems and JHG's trade secrets and other materials in an effort to solicit business from Marx Okubo.

70.     On December 13, 2012, Vandeveer sent an email to Pollak to which she attached several documents. A true and correct copy of this email and its attachments is attached hereto and incorporated herein by reference as Exhibit F.

71.     These documents included a Development Services Agreement and a Project Management Agreement with VHA's logo at the top.  These documents are virtually identical to a Development Services Agreement and Project Management agreement created by JHG or, at substantial expense to JHG, by counsel for JHG for the benefit of JHG.  Copies of these documents are attached hereto and incorporated herein by reference as Exhibit G.

72.     On information and belief, Vandeveer obtained the JHG documents upon which the VHA documents attached to the December 13, 2012 email are based from Galunas, who in turn took them without authorization from JHG's electronic document database.

73.     In that email, Vandeveer jokes that she has "'borrowed' some contracts" that "will look VERY familiar to you [Pollak]."  On information and belief, these documents were taken and modified for the purposes of obtaining insurance coverage for VHA's business and for VHA to contract with clients.

74.     Subsequently, in 2013, Galunas used JHG documents to prepare an estimated Fee and Expense schedule for VHA for a project for RLJ.  Galunas did not have permission to use JHG's computer systems or documents for the benefit of VHA.  Vandeveer also asked Galunas to locate and send her documents relating to another project performed by JHG and Galunas presumably did so.

75.     JHG believes that Galunas, Vandeveer and VHA have also used JHG's trade secrets and other materials to solicit other clients of JHG, including HPT, Destiny, Channel West Group, and Chartres Lodging. However, JHG has not been able to determine the nature and contents of everything that Galunas sent to Vandeveer and VHA due to his extensive deletion of emails.

76.     During the period from early October 2012 to January 24, 2014, Galunas: (i) downloaded to portable storage devices extensive electronic data containing trade secrets and other materials owned by JHG; (ii) downloaded to cloud storage extensive electronic data containing trade secrets and other materials owned by JHG; and (iii) transmitted by email to Vandeveer and VHA, extensive electronic data containing trade secrets and other materials owned by JHG.

77.     The trade secrets owned by JHG that were misappropriated by Galunas, Vandeveer and VHA included, but are not limited to, the methods of

23

operation, procedures, systems, and processes contained within JHG's "Cap i/X", "Evaluate, Define and Control" and "JHG Black Book" products and services.

78.     During the period from January 10, 2014 to January 24, 2014, Galunas accessed and downloaded extensive trade secrets and other materials owned by JHG and, in some cases, deleted files without authorization for doing so. In fact, JHG's investigation indicated that Galunas was accessing and downloading information late on Friday, January 17 and Saturday, January 18 in order to avoid detection by other employees of JHG.

79.     The portable storage devices (collectively the "Portable Storage Devices") Galunas used to download extensive electronic data containing trade secrets and other information owned by JHG consisted of the following:

| Device | Serial Number |
|---|---|
| WD My Passport 070A USB Device | 5758433041383932393383533 |
| Kingston DataTraveler 112 USB Device | 001CC0EC3450ECA1B714003B |
| Verbatim STORE N GO USB Device | 07012C476762EA76 |
| SanDisk Cruzer Glide USB Device | 20043513020F3682603E |
| Generic Flash Disk USB Device | 14B5D01D |
| Generic USB Flash Drive USB Device | 1203300935150930 |
| SanDisk Cruzer Glide USB Device | 2004452840169C401452 |
| Generic USB2.0 USB Device | CA21DBD1 |
| Memorex TRAVELDRIVE 005B USB Device | 07910D13076D |
| PNY USB 2.0 FD USB Device | AD28HD1100000088 |
| PNY USB 2.0 FD USB Device | AU3B242480000045 |
| Generic Flash Disk USB Device | 0ADEFF54 |

80.     The Cloud Storage Galunas used to download extensive electronic data containing trade secrets and other materials owned by JHG consisted of: (i) "D. Galunas" Dropbox account; (ii) "D Galunas" Google Drive Account; (iii) "Skydrive" account; and (iv) "SkyDrive @ The John Hardy Group" (collectively "Cloud Storage")

81.     In addition to the Secret Gmail Account, the web-based email accounts that Galunas used to transmit electronic data containing trade secrets and

other materials owned by JHG consisted of: (i) derrickgalunas@gmail.com; and

(ii) svandeveer@vandeveerhospitablity.com (collectively the "Email Accounts")

82.     Galunas, Vandeveer and VHA have improperly, illegally and

unlawfully used JHG's trade secrets and other materials to establish systems,

policies, procedures, documents, methods of operation, and forms to solicit JHG's

clients in an effort to compete directly with JHG.

## V.

## CAUSES OF ACTION

## COUNT 1: FALSE ADVERTISING IN VIOLATION OF 17 U.S.C. § 1125(a)
### (Against All Defendants)

83.     JHG incorporates all of the foregoing allegations as if fully restated

herein.

84.     Defendants have engaged in, and continue to engage in, misleading

advertising of VHA's services, which are offered in interstate commerce.

Specifically, Defendants have claimed JHG Projects as the work of VHA on

VHA's website at <vandeveerhospitality.com/Pages/CaseStudies.aspx>.

85.     Defendants' deceptive advertising on the VHA website has deceived,

or has the capacity to deceive, consumers into believing the JHG Projects

discussed on VHA's website are the work of VHA, which they are not.

86.     The mistaken belief that JHG projects were actually VHA projects has affected, or is likely to affect, consumers' decisions to hire VHA for its services.

87.     Defendants have knowingly and willfully disseminated this misleading advertising.

88.     JHG has suffered and continues to suffer damages as a direct and proximate result of Defendants' false or misleading advertising in an amount of damages to be proven at trial.

89.     JHG is entitled to an award of treble damages pursuant to 17 U.S.C. § 1117.

90.     Moreover, Defendants' aforesaid acts have irreparably harmed JHG and will continue to irreparably harm JHG unless enjoined by this Court, as a result of which JHG is without an adequate remedy at law.

91.     JHG is also entitled to an award of attorneys' fees pursuant to 17 U.S.C. § 1117.

## COUNT 2: VIOLATION OF COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030 ET SEQ.
### (Against Galunas and VHA)

92.     JHG incorporates all of the foregoing allegations as if fully restated herein.

27

93.     At the direction of VHA, Galunas intentionally, and without authorization, accessed JHG's computers, which are used in and affect interstate commerce.

94.     During this intentional and unauthorized access, Galunas, at the direction of VHA, took numerous JHG computer files.

95.     Galunas, at the direction of VHA, actively concealed his actions by attempting to delete, erase or overwrite computer evidence of his unauthorized actions.

96.     As a result of Galunas's intentional and unauthorized access to JHG's computers, Galunas and VHA recklessly caused substantial damage to JHG.

97.     Galunas's and VHA's conduct was malicious, intentional, willful, wanton and in reckless disregard of the rights of JHG.

98.     JHG has been damaged as a direct and proximate result of Galunas's and VHA's conduct and has suffered a loss of at least $5,000 in value.  JHG is entitled to recover from Galunas and VHA the full amount of the loss JHG has suffered.

## COUNT 3: VIOLATION OF GEORGIA TRADE SECRETS ACT, O.C.G.A. §§ 10-1-760 *et seq.*
### (Against All Defendants)

99.   JHG incorporates all of the foregoing allegations as if fully restated herein.

100.   Defendants unlawfully and without authorization misappropriated JHG's trade secrets.  These trade secrets include, but are not limited to, the methods of operation, procedures, systems, and processes contained within JHG's "Cap I/X", "Evaluate, Define and Control" and "JHG Black Book" products and services.

101.   Defendants misappropriated JHG's trade secrets by accessing that information through improper and unauthorized means or breaching JHG's systems and confidences.

102.   JHG's trade secrets have economic value due to the fact that they are not generally known to, and not readily ascertainable to other persons.  The trade secrets that Defendants misappropriated are of great value to JHG and are the subject of efforts that are reasonable under the circumstances to maintain their secrecy.

103.   Defendants' misappropriation of JHG's trade secrets has already caused JHG to sustain irreparable harm and will continue to cause JHG irreparable harm unless this Court enters injunctive relief.

104.   JHG has no adequate remedy at law.

105.   JHG is entitled to injunctive relief including, but not limited to, an order: (i) requiring Defendants to preserve all electronic data and all other files containing JHG's trade secrets, including preserving the Portable Storage Devices, Cloud Storage and Email Accounts"); (ii) requiring Defendants to preserve and provide electronic images of personal and business computers and electronic devices they own; (iii)  prohibiting Defendants from making any use or disclosure of JHG's trade secrets; (iv) requiring Defendants to return to JHG all of JHG's trade secrets in whatever form, and all copies and derivatives of such information; (v) requiring Defendants to obtain from their clients all information that contains or was derived from JHG's trade secrets; (vi) prohibiting Galunas, Vandeveer, Pollak and VHA from soliciting any past or existing client of JHG to the extent that Galunas, Vandeveer, Pollak and VHA took from JHG documents and information relating to that client; (vii) return to JHG all Client Confidential Information; and (viii) requiring that Defendants provide evidence that conclusively establishes that Defendants have fully complied with these orders.

106.   JHG has been damaged as a direct and proximate result of Defendants' misappropriation of JHG's trade secrets.  This damage was a reasonably foreseeable consequence of the Defendants' conduct.  As a result, JHG is entitled to recover damages caused by Defendants' conduct, including, without limitation, actual damages, unjust enrichment or damages measured by a reasonable royalty.

107.   Defendants' misappropriation was done willfully and maliciously and JHG is, therefore, entitled to an award against Defendants of exemplary damages and the recovery of reasonable attorneys' fees.

## COUNT 4: CIVIL CONSPIRACY TO VIOLATE GEORGIA TRADE SECRETS ACT
### (Against All Defendants)

108.   JHG incorporates all of the foregoing allegations as if fully restated herein.

109.   Upon information and belief, the Defendants, acting in concert with each other, agreed to take collective actions to misappropriate JHG's trade secrets.

110.   In furtherance of their conspiracy and scheme, the Defendants, acting in concert with each other, took overt and wrongful acts to misappropriate JHG's trade secrets by accessing that information through improper and unauthorized means or breaching JHG's systems and confidences.

31

111.   The Defendants' conspiratorial acts were designed to injure JHG's business and allow them to compete against JHG unfairly.

112.   Through their conspiratorial acts, the Defendants have proximately caused substantial injury to JHG.

113.   The Defendants' conspiracy to misappropriate JHG's trade secrets was in willful, wanton, malicious and reckless disregard of JHG's rights, as well as of the harm they were causing and were foreseeably likely to cause to JHG, so that punitive damages should be imposed on the Defendants.

## COUNT 5: COMPUTER THEFT IN VIOLATION OF O.C.G.A. § 16-9-93
### (Against Galunas)

114.   JHG incorporates all of the foregoing allegations as if fully restated herein.

115.   During Galunas's employment with JHG, Galunas was provided with a computer owned by JHG that was to be used only for purposes related to Galunas's employment.

116.   Galunas was also granted access to JHG's internal computer network and electronic database of company files, but only for purposes related to Galunas's employment with JHG.

117.   Using Galunas's company-issued computer and the JHG computer network in a manner he knew exceeded the rights and permissions granted by JHG,

and with the intention of taking and appropriating JHG property, Galunas took and appropriated JHG property from JHG's hard drives.

118.   Through the above-described acts, Galunas has proximately caused substantial injury to JHG, including but not limited to loss of profits and victim expenditures.

119.   Galunas's actions in violation of O.C.G.A. § 16-9-93 were willful, wanton, and malicious, and in reckless disregard of the harm they were causing and were foreseeably likely to cause to JHG, so that punitive damages should be imposed on Galunas.

## COUNT 6: CIVIL CONSPIRACY TO COMMIT COMPUTER THEFT
### (Against All Defendants)

120.   JHG incorporates all of the foregoing allegations as if fully restated herein.

121.   Upon information and belief, the Defendants, acting in concert with each other, agreed to use Galunas's JHG-owned computer and the JHG computer network in a manner they knew exceeded the rights and permissions granted by JHG, with the intention of taking JHG property.

122.   In furtherance of their conspiracy and scheme, the Defendants, acting in concert with each other, took overt and wrongful acts to use Galunas's JHG-owned computer and the JHG computer network in a manner that exceeded the

rights and permissions granted by JHG to take JHG property, with the intention of doing so.

123.   The Defendants' conspiratorial acts were designed to injure JHG's business and allow them to compete against JHG unfairly.

124.   Through their conspiratorial acts, the Defendants have proximately caused substantial injury to JHG.

125.   The Defendants' conspiracy to intentionally take JHG property through knowing, unauthorized use of a computer and computer network was in willful, wanton, malicious and reckless disregard of JHG's rights, as well as of the harm they were causing and were foreseeably likely to cause to JHG, so that punitive damages should be imposed on the Defendants.

### COUNT 7: COMPUTER TRESPASS IN VIOLATION OF O.C.G.A. § 16-9-93
**(Against Galunas)**

126.   JHG incorporates all of the foregoing allegations as if fully restated herein.

127.   During Galunas's employment with JHG, Galunas was provided with a computer owned by JHG that was to be used only for purposes related to Galunas's employment.

128.   Galunas was also granted access to JHG's internal computer network and electronic database of company files, but only for purposes related to Galunas's employment with JHG.

129.   Using Galunas's company-issued computer and the JHG computer network in a manner he knew exceeded the rights and permissions granted by JHG, and with the intention of deleting computer data from JHG's computers and networks, Galunas deleted data, including numerous documents and emails, from JHG's computer and networks.

130.   Through the above-described acts, Galunas has proximately caused substantial injury to JHG, including but not limited to loss of profits and victim expenditures.

131.   Galunas's actions in violation of O.C.G.A. § 16-9-93 were willful, wanton, and malicious, and in reckless disregard of the harm they were causing and were foreseeably likely to cause to JHG, so that punitive damages should be imposed on Defendants.

## COUNT 8: CIVIL CONSPIRACY TO COMMIT COMPUTER TRESPASS
### (Against All Defendants)

132.   JHG incorporates all of the foregoing allegations as if fully restated herein.

133.   Upon information and belief, the Defendants, acting in concert with each other, agreed to use Galunas's JHG-owned computer and the JHG computer network in a manner they knew exceeded the rights and permissions granted by JHG, with the intention of deleting computer data from JHG's computers and computer network.

134.   In furtherance of their conspiracy and scheme, the Defendants, acting in concert with each other, took overt and wrongful acts to use Galunas's JHG-owned computer and the JHG computer network in a manner that exceeded the rights and permissions granted by JHG to delete computer data from JHG's computers and computer network, with the intention of doing so.

135.   The Defendants' conspiratorial acts were designed to injure JHG's business and allow them to compete against JHG unfairly.

136.   Through their conspiratorial acts, the Defendants have proximately caused substantial injury to JHG.

137.   The Defendants' conspiracy to intentionally delete JHG's computer data through knowing, unauthorized use of a computer and computer network was in willful, wanton, malicious and reckless disregard of JHG's rights, as well as of the harm they were causing and were foreseeably likely to cause to JHG, so that punitive damages should be imposed on the Defendants.

36

## COUNT 9: COMPUTER INVASION OF PRIVACY IN VIOLATION OF O.C.G.A. § 16-9-93
**(Against Galunas)**

138.   JHG incorporates all of the foregoing allegations as if fully restated herein.

139.   During Galunas's employment with JHG, Galunas was provided with a computer owned by JHG that was to be used only for purposes related to Galunas's employment.

140.   Galunas was also granted access to JHG's internal computer network and electronic database of company files, but only for purposes related to Galunas's employment with JHG.

141.   Using Galunas's company-issued computer and the JHG computer network in a manner they knew exceeded the rights and permissions granted by JHG, and with the intention of examining financial data relating to JHG and JHG's clients, Galunas examined financial data relating to JHG and JHG's clients.

142.   Through the above-described acts, Galunas has proximately caused substantial injury to JHG, including but not limited to loss of profits and victim expenditures.

143.   Galunas's actions in violation of O.C.G.A. § 16-9-93 were willful, wanton, and malicious, and in reckless disregard of the harm they were causing

and were foreseeably likely to cause to JHG, so that punitive damages should be imposed on Galunas.

### COUNT 10: CIVIL CONSPIRACY TO COMMIT COMPUTER INVASION OF PRIVACY
### (Against All Defendants)

144.   JHG incorporates all of the foregoing allegations as if fully restated herein.

145.   Upon information and belief, the Defendants, acting in concert with each other, agreed to use Galunas's JHG-owned computer and the JHG computer network in a manner they knew exceeded the rights and permissions granted by JHG, with the intention of examining financial data relating to JHG and JHG's clients.

146.   In furtherance of their conspiracy and scheme, the Defendants, acting in concert with each other, took overt and wrongful acts to use Galunas's JHG-owned computer and the JHG computer network in a manner that exceeded the rights and permissions granted by JHG to examine financial data relating to JHG and JHG's clients, with the intention of doing so.

147.   The Defendants' conspiratorial acts were designed to injure JHG's business and allow them to compete against JHG unfairly.

148.   Through their conspiratorial acts, the Defendants have proximately caused substantial injury to JHG.

149.   The Defendants' conspiracy to intentionally examine JHG's and JHG's clients' financial data through knowing, unauthorized use of a computer and computer network was in willful, wanton, malicious and reckless disregard of JHG's rights, as well as of the harm they were causing and were foreseeably likely to cause to JHG, so that punitive damages should be imposed on the Defendants.

## COUNT 11: DECEPTIVE OR UNFAIR TRADE PRACTICES IN VIOLATION OF O.C.G.A. § 10-1-372
### (Against All Defendants)

150.   JHG incorporates all of the foregoing allegations as if fully restated herein.

151.   Defendants have engaged in, and continue to engage in, misleading advertising of VHA's services.  Specifically, Defendants have claimed JHG Projects as the work of Defendants on VHA's website at <vandeveerhospitality.com/Pages/ CaseStudies.aspx>.

152.   Defendants' deceptive advertising on the VHA website has deceived, or has the capacity to deceive, consumers into believing the JHG Projects discussed on VHA's website are the work of VHA, which they are not.

153.   The mistaken belief that JHG projects were actually VHA projects has affected, or is likely to affect, consumers' decisions to engage VHA's services.

154.   Defendants' have knowingly and willfully disseminated this misleading advertising.

155.   JHG is entitled to its costs and, due to the willful nature of the Defendants' actions, an award of its attorneys' fees and costs pursuant to § O.C.G.A. 10-1-373.  Defendants' aforesaid acts have irreparably harmed JHG and will continue to irreparably harm JHG unless enjoined by this Court, as a result of which JHG is without an adequate remedy at law.

## COUNT 12: TORTIOUS INTERFERENCE WITH CONTRACTUAL AND/OR BUSINESS RELATIONS
### (Against All Defendants)

156.   JHG incorporates all of the foregoing allegations as if fully restated herein.

157.   JHG has existing and prospective contractual and/or business relationships with its past and present clients.  Defendants were fully aware of those contractual and/or business relationships.

158.   Defendants have, through improper use of JHG's materials, intentionally induced past and present clients of JHG to cease their contractual and/or business relationship with JHG and enter into a business relationship with

40

VHA.  Defendants' conduct in doing so was willful, intentional, with malice and without justification or privilege.

159.   Defendants used improper means to intentionally interfere with JHG's existing and prospective contractual and/or business relationships with its past and present clients.

160.   Defendants are continuing to interfere intentionally with JHG's advantageous business relationships with its clients.

161.   JHG has suffered damages as a direct and proximate result of Defendants' conduct in intentionally interfering with JHG's advantageous business relationships with its clients.

162.   JHG has suffered, and will continue to suffer, irreparable harm and damages.  This damage was a reasonably foreseeable consequence of Defendants' conduct.

163.   Defendants' conduct constitutes intentional interference with contractual relations for which Defendants are liable to JHG.

164.   Defendants' actions were willful and malicious and JHG is entitled to an award of exemplary and punitive damages.

## COUNT 13: CIVIL CONSPIRACY TO TORTIOUSLY INTERFERE WITH CONTRACTUAL RELATIONS
### (Against All Defendants)

165.   JHG incorporates all of the foregoing allegations as if fully restated herein.

166.   Upon information and belief, Defendants, acting in concert with each other, agreed to take collective actions to interfere with JHG's rights under the contracts and/or advantageous business relationships that JHG maintained with its past and present clients.

167.   In furtherance of their conspiracy and scheme, Defendants, acting in concert with each other, took overt and wrongful acts to interfere with JHG's rights under the contracts and/or advantageous business relationships that JHG maintains with its past and present clients, using improperly obtained JHG property to steal away JHG's past and present clients.

168.   The Defendants' conspiratorial acts were designed to injure JHG'S business and allow Defendants to compete against JHG unfairly.

169.   Through their conspiratorial acts, the Defendants have proximately caused substantial injury to JHG.

170.   The Defendants' conspiracy to interfere with JHG's rights under its contracts and/or advantageous business relationships was carried out in willful,

42

wanton, malicious and reckless disregard of JHG's rights, as well as of the harm they were causing and were foreseeably likely to cause to JHG, so that punitive damages should be imposed on Defendants.

## COUNT 14: BREACH OF DUTY OF LOYALTY AND/OR FIDUCIARY DUTY
### (Against Galunas)

171.   JHG incorporates all of the foregoing allegations as if fully restated herein.

172.   As Director of Construction Services, JHG placed Galunas in a position of trust and confidence and gave him authority to act as agent for JHG with respect to various matters as described in the foregoing paragraphs of this Complaint.

173.   In that position, Galunas owed JHG fiduciary duties and duties of loyalty to JHG's business interests and to avoid any conflict between the company's interests and his own or others.

174.   Moreover, simply as an employee of JHG, Galunas owed JHG a duty of loyalty, faithful service and regard for JHG's interest.

175.   Contrary to these duties, Galunas was also acting as Chief Financial Officer of VHA at the same time he was employed by JHG.

176.   Galunas failed to disclose that position to JHG and, in fact, actively concealed that information from JHG.

177.   While employed by JHG, Galunas assisted Vandeveer and Pollak in efforts to solicit clients for VHA in direct competition with JHG.

178.   By assisting Vandeveer and Pollak in efforts to solicit clients for VHA in direct competition with JHG, Galunas breached his fiduciary duties and duty of loyalty to JHG.

179.   JHG has been damaged as a direct and proximate result of Galunas' breach of fiduciary duty and duty of loyalty.  VHA, Vandeveer, and Pollack are vicariously liable for this injury and damage.  As a result, JHG is entitled to recover damages caused by the conduct of Galunas, including the return of all compensation paid to Galunas by JHG during the time that Galunas was breaching his duties to JHG, and all revenues realized by the Defendants stemming from their illegal acts.

180.   Galunas' conduct was willful and malicious and JHG is, therefore, entitled to an award against Galunas of punitive and exemplary damages and the recovery of reasonable attorneys' fees.

181.   VHA, Vandeveer, and Pollack induced Galunas to breach his duties to JHG in willful, wanton, malicious, and reckless disregard of such, as well as of the

44

harm they were causing and were foreseeably likely to cause to JHG.  Punitive damages should therefore be imposed against VHA, Vandeveer, and Pollack.

## COUNT 15: CIVIL CONSPIRACY TO BREACH DUTY OF LOYALTY AND/OR FIDUCIARY DUTY
### (Against All Defendants)

182.   JHG incorporates all of the foregoing allegations as if fully restated herein.

183.   Upon information and belief, the Defendants, acting in concert with each other, agreed to take collective actions in breach of the fiduciary duty and duty of loyalty that Galunas owed to JHG in performing his duties as an employee of JHG.

184.   In furtherance of their conspiracy and scheme, and while Galunas was still employed at JHG, the Defendants, acting in concert with each other, took overt and wrongful acts to compete against JHG, which included, but are not limited to, Galunas assisting VHA in taking competitive steps against JHG while Galunas was still employed with JHG, and Galunas accessing JHG's computer database for an improper and competitive purpose and stealing proprietary and confidential information and other JHG property.

185.   The Defendants' conspiratorial acts were designed to injure JHG's business and allow them to compete against JHG unfairly.

45

186.   Through their conspiratorial acts, the Defendants have proximately caused substantial injury to JHG.

187.   The Defendants' conspiracy to breach Galunas's fiduciary duty and duty of loyalty to JHG was in willful, wanton, malicious and reckless disregard of such duty, as well as of the harm they were causing and were foreseeably likely to cause to JHG, so that punitive damages should be imposed on the Defendants.

## COUNT 16: UNJUST ENRICHMENT
### (Against All Defendants)

188.   JHG incorporates all of the foregoing allegations as if fully restated herein.

189.   Defendants have used materials and data unlawfully taken from JHG to establish a business that competes directly with JHG.

190.   Had Defendants not used these JHG materials data to start their business, Defendants would have needed to incur, at a minimum, thousands of dollars in legal fees.

191.   For example, the Development Services Agreement and Project Management Agreement that the Defendants copied, modified, and used are the product of many thousands of dollars in legal fees spent by JHG over the past twenty years.

192.   Defendants have therefore received and enjoyed the benefit of JHG's sophisticated legal documents without having to pay for those documents.  Upon information and belief, the Defendants have used these documents in order to obtain liability insurance coverage and to solicit current and former JHG clients, in addition to new clients.

193.   Defendants have also used JHG's materials and data to develop Defendants' own marketing materials that deceive the public into believing clients and projects of JHG are in fact the clients and projects of Defendants.

194.   Moreover, Galunas was specifically unjustly enriched in that he he was paid a salary by JHG while working, during business hours, for the benefit of VHA and to the detriment of JHG.

195.   Defendants have been unjustly enriched by their unlawful and wrongful acts.

196.   Defendants should be divested of their unjustly gained enrichment in an amount to be proven by JHG at trial.

## COUNT 17: ATTORNEYS' FEES PURSUANT TO O.C.G.A. § 13-6-11
### (Against All Defendants)

197.   JHG incorporates all of the foregoing allegations as if fully restated herein.

198.   By their actions and conduct described herein, Defendants have acted in bad faith and have caused JHG unnecessary trouble and expense, entitling JHG to recover its costs and expenses of litigation, including attorney's fees pursuant to O.C.G.A. § 13-6-11.

## JURY DEMAND

JHG demands trial by jury of all issues raised in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff JHG respectfully requests the following relief:

A.   Preliminary and permanent injunctive relief as follows:

i.   Ordering Defendants to preserve all electronic data and all other files containing JHG's trade secrets and other materials;

ii.   requiring Defendants to preserve, maintain and protect in their present state and provide to JHG a forensic image or a forensic copy, without limitation of the following: (i) their personal and business computers, email and file servers; (ii) all iPhones, smart phones and cellular phones; (iii) all portable storage devices including but not limited to USB devices, external hard drives, and CDs and DVDs; and (iv) cloud repositories

48

including but not limited to Dropbox, Google Drive and SkyDrive;

iii.    requiring Defendants to preserve and provide to JHG a copy or image of the electronic images of personal and business computers and electronic devices they own;

iv.    prohibiting Defendants from making any use or disclosure of JHG's trade secrets;

v.    requiring Defendants to obtain from their clients all information that contains or was derived from JHG's trade secrets;

vi.    requiring Defendants to return to JHG all of JHG's trade secrets and other materials in whatever form, and all copies and derivatives of such information, and to subsequently destroy whatever copies or information remain in Defendants' possession;

vii.    prohibiting Defendants from soliciting any past or existing client of JHG to the extent that Defendants took from JHG documents and information relating to that client;

viii.    prohibiting Defendants from using JHG's client names and projects on their website;

       ix.       returning to JHG all Client Confidential Information; and

       x.       requiring that Defendants provide evidence that conclusively

establishes that Defendants have fully complied with these

orders.

B.    Monetary damages sustained by virtue of Defendants' acts

complained of herein, in an amount permitted by statute or other applicable law;

C.    Punitive and exemplary damages as permitted by statute or other

applicable law;

D.    The profits of Defendants attributable to the acts complained of

herein;

E.    Pre- and post-judgment interest, the cost of this action, and JHG's

reasonable attorneys' fees; and such other different and additional relief as the

Court deems just and proper.

Respectfully submitted this 17th day of November, 2014.

Jason D. Rosenberg (Ga. Bar No. 510855)
jason.rosenberg@alston.com
Brett E. Coburn (Ga. Bar No. 171094)
brett.coburn@alston.com
Uly S. Gunn (Ga. Bar No. 261871)
sam.gunn@alston.com

ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309
T: (404) 881-7000
F: (404) 881-7777

Of Counsel (applications for admission *pro
hac vice* to be filed):

Joseph L. Luciana, III
jluciana@dfllegal.com
James S. Malloy
jmalloy@dflegal.com

DINGESS, FOSTER, LUCIANA,
DAVIDSON & CHLEBOSKI LLP
PNC Center, Third Floor
20 Stanwix Street
Pittsburgh, Pennsylvania 15222
T: (412) 926-1800
F: (412) 926-1801

*Attorneys for Plaintiff John Hardy Group,
Inc.*

51